UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LEON ROBINSON,<br><br>            Plaintiff,<br><br>  v.<br><br>THOMAS MENINO et al.,<br><br>            Defendants. | CIVIL ACTION<br>NO. 04-11023-RCL |

**MOTION FOR SUMMARY JUDGMENT BY
DEFENDANTS AMERICAN BROADCASTING COMPANIES, INC.
AND HEARST-ARGYLE TELEVISION, INC.**

Defendants, American Broadcasting Companies, Inc. ("ABC", incorrectly sued herein as American Broadcasting Co., Inc.) and Hearst-Argyle Television, Inc. ("Hearst", incorrectly sued herein as Hearst-Argyle Station Inc. and WCVB TV (Channel 5, Boston)) (collectively, the "Broadcast Defendants"), hereby move, pursuant to Fed. R. Civ. P. 56, that summary judgment enter in their favor dismissing each of the claims of plaintiff, Leon Robinson ("Robinson"). As grounds for their motion, the Broadcast Defendants rely on their Memorandum of Law, the Affidavit of Brandon L. Bigelow and the exhibits attached thereto, and the Rule 56.1 Statement of Undisputed Material Facts set forth herein.

**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.    On February 21, 2001, Mr. Recardo Robinson was shot and killed in his barbershop in Brighton. *See* Memorandum, Findings and Orders on Defendant's Motions to Suppress Evidence, *Commonwealth v. Leon Robinson*, Suffolk County Superior Ct., Crim. Action No. 01-10384, at 3 (Jan. 21, 2004) ("Suppression Decision"), attached as Exhibit A to the Affidavit of Brandon L. Bigelow ("Bigelow Aff.").

2. The plaintiff, Leon Robinson (who is not related to the victim), was subsequently charged with murder. On May 26, 2005, a Suffolk County jury convicted Robinson of murder in the first degree. See Verdict Slips and Suffolk County Superior Court Criminal Docket, *Commonwealth v. Leon Robinson*, Suffolk County Superior Ct., Crim. Action No. 01-10384, Bigelow Aff., Exhibits B-C.

3. Prior to his criminal trial, Robinson moved to suppress all evidence seized from his West Roxbury apartment, "alleging that the Boston Police conducted a warrantless search of his apartment shortly before his arrest on February 21, 2001." Robinson also claimed that Boston Police and/or a civilian television film crew videotaped the interior of his apartment during this allegedly warrantless search. See Suppression Decision at 13, 14, Bigelow Aff., Exhibit A.

4. On July 14, 15, and 16, 2003, the Superior Court conducted evidentiary hearings on Robinson's suppression motion, taking evidence from nine witnesses. *Id*. at 2.

5. On January 21, 2004, the Court issued its 25 page Suppression Decision denying the motion to suppress, resting its decision on detailed findings of fact and rulings of law. *Id*. at 25.

6. The Superior Court expressly rejected Robinson's allegation that the Boston Police conducted a warrantless search of Robinson's apartment on February 21, 2005. The Court found that the Boston Police applied for and obtained a search warrant for Robinson's apartment in the early morning hours of February 22, 2001. Suppression Decision at 10.

7. The Superior Court also found that the search was not initiated until approximately 3:15 a.m. on February 22, 2001, after the search warrant issued. *Id.* at 11.

8.      The Court therefore concluded that "Robinson has failed to produce any credible evidence that the Boston Police ever entered his apartment before procuring a court authorized search warrant." *Id.* at 13-14.

9.      The Superior Court also rejected Robinson's contention that anyone entered or videotaped his premises' interior without proper court authorization. *Id.* at 14-15.

10.     The Court noted that Robinson -- who was not present when the search occurred and therefore has absolutely no personal knowledge on which to base his claim -- relied on the testimony of his building superintendent (Javier Soto) to support his contention that a cameraman filmed the interior of his premises on February 21, 2001, prior to the issuance of the search warrant. *Id.* at 8, 13, 14.

11.     Reviewing the relevant evidence, the Court found that "the testimony makes clear that Soto was never able to see the defendant's apartment door, much less see whether or not anyone -- including a camera person -- was inside the apartment. Once more, Robinson has failed to produce any credible evidence that the Boston Police ever entered his apartment before procuring a court authorized search warrant. Furthermore, the credible evidence procured by the Commonwealth affirms that there was no entry or search of Robinson's apartment prior to the issuance of the search warrant therefore." *Id.* at 14. *See also id.* at 13 ("Soto's testimony clearly establishes that he never was in a position to even see the defendant's apartment door, much less see whether or not anyone -- including a camera person -- was inside of the apartment" on February 21, 2001.).

12.     In December 2003, Robinson issued a subpoena to ABC calling for the production of any film involving the Boston Police on February 21-22, 2001. Defendant's Subpoena, Bigelow Aff., Exhibit D.

13. ABC filed a response to the subpoena stating that it had made a "diligent search for a videotape made on or about February 21, or February 22, 2001, of events related to the execution of a search warrant of defendant's premises," and that "no such videotape has been found." Response of Non-Party American Broadcasting Companies, Inc. to Defendant's Subpoena, Bigelow Aff., Exhibit E.

14. Robinson issued another subpoena to ABC in February 2005, again seeking "[a]ny and all film relating to the filming of 1587 Commonwealth Avenue in Boston and 27 Spring Street, West Roxbury on February 21, 2001 and February 22, 2001," as well as any documents reflecting communications between ABC and the Boston Police concerning such filming or the December 2003 subpoena. Defendant's Second Subpoena, Bigelow Aff., Exhibit F.

15. On February 22, 2005, in response to the subpoena, ABC submitted the affidavit of Terence Wrong, the producer of ABC's "Boston 24/7" television program. Wrong testified that he had participated in arrangements made with the City of Boston for a cameraman working for ABC named Dennis McCarthy to accompany Boston Police officers on duty on February 21 and 22, 2001. Affidavit of Terence Wrong in Response to Subpoena of American Broadcast Systems, Inc., ¶¶ 2, 4, Bigelow Aff., Exhibit G.

16. Wrong also testified that no footage from those days' events ever was broadcast by ABC, and further testified that ABC had no film or videotape of either the murder scene or Robinson's apartment from either February 21 or February 22, 2001. *Id.*, ¶ 4.

17. Wrong explained that any videotape made during the course of those days had been lost, along with all of the other contents of Wrong's luggage, after he accidentally left his suitcase in a taxi early in 2001. *Id.*, ¶¶ 5-6.

18.     Robinson also subpoenaed McCarthy, the cameraman identified by Wrong, to testify at a preliminary hearing held on March 3, 2005, in Robinson's criminal case. Subpoena to McCarthy, Bigelow Aff., <u>Exhibit H</u>.

19.     McCarthy testified that while working as a cameraman for ABC News he was assigned to follow Boston Police homicide detectives as they conducted an investigation on February 21 and 22, 2001. Transcript of McCarthy Testimony ("McCarthy Tr.") at 43:10-11, Bigelow Aff., <u>Exhibit I</u>.

20.     Robinson's counsel attempted -- unsuccessfully -- to prove that McCarthy had entered Robinson's apartment during the search conducted by Boston Police:

> Q.     And do you remember as part of your work on that day whether or not you were present near an apartment or any apartment as part of your filming in the 24/7 segment?
>
> A.     My recollection is that I was with the police when they went to the apartment. I do not recall going in the apartment and filming in the apartment.
>
> *    *    *    *
>
> Q.     So, your memory is that you were in the apartment complex, but you don't have any memory about your being in the apartment itself?
>
> A.     I don't believe so.
>
> *    *    *    *
>
> Q.     But you don't remember whether or not you actually went into the apartment itself?
>
> A.     I don't believe so.

McCarthy Tr. at 44:3-10, 46:5-9, 46:13-15.

21. Hearst is majority owned by the Hearst Corporation. *See* Local Rule 7.3 Corporate Disclosure Statement of Defendants American Broadcasting Companies, Inc., Hearst-Argyle Station Inc., and WCVB-TV (Channel 5, Boston).

22. The Hearst Corporation does not have a parent corporation, and no publicly held company holds more than ten percent of its stock. *Id*.

23. ABC, in contrast, is an indirect wholly owned subsidiary of the Walt Disney Company, a publicly traded company. *Id.*

24. ABC is the sole owner of the "Boston 24/7" television program. Amended Complaint, ¶ 20.

25. McCarthy was working for ABC -- not Hearst -- on February 21-22, 2001, when the events at issue in the Amended Complaint allegedly took place. *Id*., ¶ 20a; McCarthy Tr. at 43:8-11.

                                                                   Respectfully submitted,

                                                                   **AMERICAN BROADCASTING COMPANIES, INC. and HEARST-ARGYLE TELEVISION, INC. d/b/a WCVB-TV CHANNEL 5,**

By their attorneys,

/s/ Brandon L. Bigelow
Jonathan M. Albano, BBO# 013850
Brandon L. Bigelow, BBO # 651143
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

*Of counsel:*

Indira Satyendra, Esq.
American Broadcasting Companies, Inc.
77 West 66th Street
New York, NY 10023-6298
(212) 456-7777

Dated:  September 19, 2005

LITDOCS/613997.1

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document was served upon the plaintiff Leon Robinson (A-225594), Souza-Baranowski Correctional Center, P.O. Box 8000, Shirley, MA 01464 by Federal Express and on counsel of record for the defendants by first class mail and electronically via the ECF/CM on September 19, 2005.

                                                         /s/ Brandon L. Bigelow
                                                         Brandon L. Bigelow