UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LEON ROBINSON,  Plaintiff, | ) ) ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-11023-RCL |
| THOMAS MENINO et al.,  Defendants. | ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN BROADCASTING
COMPANIES, INC. AND HEARST-ARGYLE TELEVISION, INC.**

Defendants, American Broadcasting Companies, Inc. ("ABC") (incorrectly sued herein as American Broadcasting Co., Inc.) and Hearst-Argyle Television, Inc., d/b/a WCVB TV Channel 5 (incorrectly sued herein as Hearst-Argyle Station Inc. and WCVB TV (Channel 5, Boston)) ("Hearst") (collectively, the "Broadcast Defendants"), respectfully submit this memorandum of law in support of their motion for summary judgment seeking the dismissal of the Amended Complaint of plaintiff, Leon Robinson ("Robinson").

As shown below, Robinson improperly seeks to re-litigate issues decided against him during a suppression hearing held before the Suffolk Superior Court prior to Robinson being tried and convicted on murder charges. During the suppression hearing, Robinson contended that the Boston Police, accompanied by an ABC cameraman, illegally entered his apartment during the evening of February 21, 2002, before the issuance of a search warrant authorizing the search and seizure of his apartment. After a three-day evidentiary hearing that included the testimony of nine witnesses, the Superior Court issued a 25-page Memorandum, Findings and Orders on Defendant's Motion to Suppress. In its decision, the Superior Court expressly found that no search of Robinson's apartment occurred until February 22, 2002, **after** the issuance of a valid search warrant. Having had a full and fair opportunity to litigate that issue, Robinson is not now entitled to pursue a civil claim premised on the same unsupportable factual allegation.

In addition, because of the extensive evidentiary record developed during the suppression hearing and thereafter, Robinson has no reasonable expectation of proving a necessary element of his claim -- i.e., he cannot demonstrate any genuine issue of fact as to whether an ABC cameraman was present in his apartment on February 21, 2005, or at any time thereafter. ABC therefore is entitled to summary judgment dismissing Robinson's complaint.

For the same reasons, Robinson's claims against Hearst also must be dismissed. Moreover, as an independent matter, Hearst's motion should be granted because it was named as a defendant only because of Robinson's mistaken belief that Hearst, as the local Boston television station that broadcasts ABC programming, somehow is responsible for actions allegedly taken by ABC, an entirely separate corporate entity. Because Robinson cannot support any theory of liability against Hearst based on the alleged acts of ABC, Hearst has independent grounds for the entry summary judgment in its favor.

## I.   UNDISPUTED MATERIAL FACTS

**A.   The Superior Court's Suppression Decision**

On February 21, 2001, Mr. Recardo Robinson was shot and killed in his barbershop in Brighton. *See* Memorandum, Findings and Orders on Defendant's Motions to Suppress Evidence, *Commonwealth v. Leon Robinson*, Suffolk County Superior Ct., Crim. Action No. 01-10384, at 3 (Jan. 21, 2004) ("Suppression Decision"), attached as Exhibit A to the Affidavit of Brandon L. Bigelow ("Bigelow Aff."). The plaintiff Robinson (who is not related to the victim) was subsequently charged with murder. On May 26, 2005, a Suffolk County jury convicted Robinson of murder in the first degree. See Verdict Slips and Suffolk County Superior Court Criminal Docket, *Commonwealth v. Leon Robinson*, Suffolk County Superior Ct., Crim. Action No. 01-10384, Bigelow Aff., Exhibits B-C.

Prior to his criminal trial, Robinson moved to suppress all evidence seized from his West Roxbury apartment, "alleging that the Boston Police conducted a warrantless search of his apartment shortly before his arrest on February 21, 2001." Robinson also claimed that Boston Police and/or a civilian television film crew videotaped the interior of his apartment during this

2

allegedly warrantless search. *See* Suppression Decision at 13, 14, Bigelow Aff., <u>Exhibit A</u>.

On July 14, 15, and 16, 2003, the Superior Court conducted evidentiary hearings on Robinson's suppression motion, taking evidence from nine witnesses. *Id*. at 2. On January 21, 2004, the Court issued its 25 page Suppression Decision denying the motion to suppress, resting its decision on detailed findings of fact and rulings of law. *Id*. at 25.

The Superior Court expressly rejected Robinson's allegation that the Boston Police conducted a warrantless search of Robinson's apartment on February 21, 2005. The Court found that the Boston Police applied for and obtained a search warrant for Robinson's apartment in the early morning hours of February 22, 2001. Suppression Decision at 10. The Superior Court also found that the search was not initiated until approximately 3:15 a.m. on February 22, 2001, **after** the search warrant issued. *Id.* at 11. The Court therefore concluded that "Robinson has failed to produce any credible evidence that the Boston Police ever entered his apartment before procuring a court authorized search warrant." *Id.* at 13-14.

The Superior Court also rejected Robinson's contention that anyone entered or videotaped his premises' interior without proper court authorization. *Id.* at 14-15. The Court noted that Robinson -- who was not present when the search occurred and therefore has absolutely no personal knowledge on which to base his claim -- relied on the testimony of his building superintendent (Javier Soto) to support his contention that a cameraman filmed the interior of his premises on February 21, 2001, prior to the issuance of the search warrant. *Id.* at 8, 13, 14. Reviewing the relevant evidence, the Court found that "the testimony makes clear that Soto was never able to see the defendant's apartment door, much less see whether or not anyone -- including a camera person -- was inside the apartment. Once more, Robinson has failed to produce any credible evidence that the Boston Police ever entered his apartment before procuring a court authorized search warrant. Furthermore, the credible evidence procured by the Commonwealth affirms that there was no entry or search of Robinson's apartment prior to the issuance of the search warrant therefore." *Id.* at 14. *See also id.* at 13 ("Soto's testimony clearly establishes that he never was in a position to even see the defendant's apartment door, much less

3

see whether or not anyone -- including a camera person -- was inside of the apartment" on February 21, 2001.).

B.   **Evidence Obtained from ABC During Robinson's Prosecution**

In December 2003, Robinson issued a subpoena to ABC calling for the production of any film involving the Boston Police on February 21-22, 2001.  Defendant's Subpoena, Bigelow Aff., Exhibit D.  ABC filed a response to the subpoena stating that it had made a "diligent search for a videotape made on or about February 21, or February 22, 2001, of events related to the execution of a search warrant of defendant's premises," and that "no such videotape has been found."  Response of Non-Party American Broadcasting Companies, Inc. to Defendant's Subpoena, Bigelow Aff., Exhibit E.

Robinson issued another subpoena to ABC in February 2005, again seeking "[a]ny and all film relating to the filming of 1587 Commonwealth Avenue in Boston and 27 Spring Street, West Roxbury on February 21, 2001 and February 22, 2001," as well as any documents reflecting communications between ABC and the Boston Police concerning such filming or the December 2003 subpoena.  Defendant's Second Subpoena, Bigelow Aff., Exhibit F.  On February 22, 2005, in response to the subpoena, ABC submitted the affidavit of Terence Wrong, the producer of ABC's "Boston 24/7" television program.  Wrong testified that he had participated in arrangements made with the City of Boston for a cameraman working for ABC named Dennis McCarthy to accompany Boston Police officers on duty on February 21 and 22, 2001.  Affidavit of Terence Wrong in Response to Subpoena of American Broadcast Systems, Inc., ¶¶ 2, 4, Bigelow Aff., Exhibit G.  Wrong also testified that no footage from those days' events ever was broadcast by ABC, and further testified that ABC had no film or videotape of either the murder scene or Robinson's apartment from either February 21 or February 22, 2001.  *Id.*, ¶ 4. Wrong explained that any videotape made during the course of those days had been lost, along with all of the other contents of Wrong's luggage, after he accidentally left his suitcase in a taxi early in 2001. *Id.*, ¶¶ 5-6.

4

Robinson also subpoenaed McCarthy, the cameraman identified by Wrong, to testify at a preliminary hearing held on March 3, 2005, in Robinson's criminal case. Subpoena to McCarthy, Bigelow Aff., <u>Exhibit H</u>. McCarthy testified that while working as a cameraman for ABC News he was assigned to follow Boston Police homicide detectives as they conducted an investigation on February 21 and 22, 2001. Transcript of McCarthy Testimony ("McCarthy Tr.") at 43:10-11. Robinson's counsel attempted -- unsuccessfully -- to prove that McCarthy had entered Robinson's apartment during the search conducted by Boston Police:

> Q.  And do you remember as part of your work on that day whether or not you were present near an apartment or any apartment as part of your filming in the 24/7 segment?
>
> A.  My recollection is that I was with the police when they went to the apartment. I do not recall going in the apartment and filming in the apartment.
>
> \*   \*   \*   \*
>
> Q.  So, your memory is that you were in the apartment complex, but you don't have any memory about your being in the apartment itself?
>
> A.  I don't believe so.
>
> \*   \*   \*   \*
>
> Q.  But you don't remember whether or not you actually went into the apartment itself?
>
> A.  I don't believe so.

McCarthy Tr. at 44:3-10, 46:5-9, 46:13-15.

**C.   The Allegations of Robinson's Amended Complaint**

Robinson's Amended Complaint largely parrots the factual allegations of his motion to suppress, including contentions that were explicitly rejected by the Superior Court. According to Robinson, on February 21, 2001, the defendant Boston Police Officers, accompanied by McCarthy, entered his apartment without a valid search warrant and without Robinson's consent. Amended Complaint, ¶¶ 20C, 21. Robinson also claims that during this allegedly unlawful

search on February 21, 2001, McCarthy photographed the interior of Robinson's premises. Amended Complaint, ¶ 23. These allegations are the entire basis for his claims against the Broadcast Defendants.

### D. Robinson's Mistaken Naming of Hearst as a Defendant Herein.

Hearst is majority owned by The Hearst Corporation. *See* Local Rule 7.3 Corporate Disclosure Statement Of Defendants American Broadcasting Companies, Inc., Hearst-Argyle Station Inc., And WCVB-TV (Channel 5, Boston). The Hearst Corporation does not have a parent corporation, and no publicly held company holds more than ten percent of its stock. *Id*. ABC, in contrast, is an indirect wholly owned subsidiary of The Walt Disney Company, a publicly traded company. *Id.* ABC is the sole owner of the "Boston 24/7" television program. Amended Complaint, ¶ 20. McCarthy was working for ABC -- not Hearst -- on February 21-22, 2001, when the events at issue in the Amended Complaint allegedly took place. *Id*., ¶ 20A; McCarthy Tr. at 43:8-11.

## II.   ARGUMENT

### A.   Standard of Review.

A party moving for summary judgment bears the initial burden of showing that there are no material facts genuinely in dispute, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In making this showing, a moving party that does not carry the burden of proof at trial may either submit affirmative evidence to negate an element of the nonmovant's claim, or the moving party may demonstrate that the nonmovant has no reasonable expectation of proving an element of the claim. *See, e.g., Fireman's Fund Ins. Co. v. Harley Realty Co*., 24 F.Supp.2d 117, 118 (D. Mass. 1998). "Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). To satisfy the criterion of trialworthiness, an issue must be both "genuine" and "material" in order to forestall summary judgment. *Id*. "A plaintiff may not obtain a trial merely on the allegations in its complaint, or by showing that there is some metaphysical doubt as to the

material facts." *NFL v. Insight Telecommunications Corp.*, 158 F.Supp.2d 124, 130 (D. Mass. 2001) (internal quotations omitted).

Although "our judicial system zealously guards the attempts of pro se litigants on their own behalf," the First Circuit has warned that "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (affirming summary judgment award against pro se RICO plaintiff). Accordingly, even where pro se plaintiffs are involved, courts will not "fabricate unpleaded facts to support . . . conclusory allegations." *Wilson v. Brown*, 889 F.2d 1195, 1198 n.3 (1st Cir. 1989) (internal brackets and quotations omitted). Applying the foregoing standard, Robinson cannot demonstrate any trial-worthy issue sufficient to defeat the Broadcast Defendants' motion for summary judgment.

**B.   The Doctrine of Collateral Estoppel Precludes Robinson from Relitigating Issues Decided Against Him in His Criminal Prosecution.**

Robinson alleges that the Broadcast Defendants violated his federal and state constitutional rights under 42 U.S.C. § 1983 and the Massachusetts civil rights statute, G. L. c. 12, § 11I, and committed the tort of trespass. Amended Complaint, Counts I and II. Each of these claims is entirely dependent upon Robinson's allegation that an agent of ABC accompanied the Boston Police on an unauthorized search of his apartment on February 21, 2001, before the issuance of a search warrant. *See* Amended Complaint, ¶¶ 20C - 23. Robinson had a full and fair opportunity -- assisted by able counsel -- to prove those facts during his suppression hearing. His failure to do so precludes him from pursuing a civil action based on allegations that are contrary to the findings of the Superior Court.

It is well established that in Massachusetts, collateral estoppel (or issue preclusion) prevents a criminal defendant from relitigating in a civil case an issue adversely decided in a criminal prosecution "where there is an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction." *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1st Cir. 1992) (collateral estoppel doctrine

7

precluded criminal defendant convicted of charges from pursuing civil claim for malicious prosecution); *see also Davis v. Schifone*, 185 F.Supp.2d 95, 101 (D. Mass. 2001) (plaintiff who had full and fair opportunity to raise probable cause issue at his criminal trial was collaterally estopped from relitigating probable cause issue in civil case against arresting officer); *Aetna Casualty & Surety Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985) ("a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution.").

When facts have been determined in a prior criminal proceeding, a civil litigant "may move for summary judgment on the ground that . . . the earlier litigation actually determined an issue crucial to both actions so that an application of collateral estoppel entitles the movant to a judgment as a matter of law in the second action." *Robinson v. The Globe Newspaper Co.*, 26 F. Supp.2d 195, 199 (D. Me. 1998) (granting summary judgment to libel defendant based on facts established in criminal action against the plaintiff). Accordingly, a criminal defendant who is provided a full and fair opportunity to litigate issues in a suppression hearing is bound by the court's findings in any subsequent civil litigation. *See Simmons v. O'Brien*, 77 F.3d 1093, 1097 (8th Cir. 1996) (convicted criminal defendant who had unsuccessfully moved to suppress his confession on the grounds of coercion was collaterally estopped from pursuing civil rights claim challenging the voluntariness of his confession).

In this case, the Superior Court ruled against Robinson on his claim that the Boston Police and a television cameraman illegally entered his apartment on February 21, 2001 prior to the issuance of a search warrant. Those findings are fatal to Robinson's civil claims against the Broadcast Defendants. The doctrine of collateral estoppel therefore mandates that summary judgment enter dismissing Robinson's claims.

C. **Robinson Cannot Meet His Burden of Demonstrating a Genuine Disputed Issue of Fact.**

Wholly apart from the collateral estoppel doctrine, in order to survive a motion for summary judgment, Robinson must demonstrate at least a reasonable prospect of obtaining

8

evidence sufficient to create a genuine issue of dispute fact. The undisputed factual record -- fully developed by prior evidentiary hearings to which he was a party -- demonstrates that Robinson cannot meet his burden and that summary judgment is well-warranted. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"); *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("if the factual context renders respondents' claim implausible … respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary").

Robinson's complaint is based on allegations concerning events he claims took place at his apartment at a time when he was in police custody. *See* Suppression Decision at 1, 8, 13-14. Robinson therefore cannot offer any testimony of his own personal knowledge to support his claims.

Moreover, as the evidentiary hearings conducted by the Superior Court establish, Robinson has absolutely no prospect of obtaining admissible evidence from other sources to support his claims. Despite three days of evidentiary hearings on his motion to suppress, Robinson was not able to offer any testimony in support of his allegation that the Boston Police and the Broadcast Defendants participated in an unauthorized search of his apartment on February 21, 2001, prior to the issuance of a search warrant. *Compare* Amended Complaint, ¶¶ 20C-23 and Suppression Decision at 13-14. Indeed, the sole witness relied on by Robinson to support his allegations testified that he was not able to determine whether anyone entered Robinson's apartment on February 21, 2001, much less a television cameraman. Suppression Decision at 13-14.

The testimony Robinson obtained from cameraman McCarthy prior to his criminal trial only underscores that conclusion. Unlike Robinson, McCarthy actually does have personal knowledge of the events at issue. But his testimony fails to offer any support for the claim that

9

ABC entered Robinson's apartment on either February 21 or February 22, 2001. McCarthy Tr. at 44:3-10; 46:5-9; 46:13-15. Robinson thus has no prospect of offering admissible evidence to counter McCarthy's testimony. His inability to demonstrate any genuine issue of disputed fact requires that summary judgment enter dismissing all of his claims against the Broadcast Defendants.[1]

**D.     Hearst Is Not a Proper Party to this Action**

Even if Robinson could maintain a civil action in connection with issues already conclusively decided against him by the Suffolk County Superior Court, Hearst is not a proper party to this action. All of Robinson's claims against the Broadcast Defendants are dependent on proof that McCarthy -- then working as a cameraman for ABC, not Hearst -- entered Robinson's apartment. Amended Complaint, ¶¶ 20A, 20C; McCarthy Tr. at 43:8-11. The fact that Hearst owns a local affiliate of ABC that broadcasts ABC programming does not make it liable for acts allegedly committed by ABC or its agents. Because Robinson has not and cannot establish any connection between McCarthy's alleged conduct and Hearst, summary judgment in favor of Hearst should enter on all counts of the Amended Complaint.

---

[1] Moreover, even if Robinson somehow could establish that McCarthy entered Robinson's premises during the search warrant executed on February 22, 2001, the Broadcast Defendants still would be entitled to summary judgment. The search warrant explicitly authorized "[p]hotographic representation of said premises, and evidence collected." *See* Exhibit B to Robinson's Memorandum in Opposition to the City Defendants' Motion to Dismiss. Proof that an ABC cameraman photographed the premises -- of which there is absolutely none -- therefore would not establish a claim upon which relief may be granted. *See Stack v. Killian*, 96 F.3d 159, 163 (6th Cir. 1996) (general rule that the unauthorized presence of the press during the execution of search warrants violates the Fourth Amendment does not apply if the warrant at issue authorized "videotaping and photographing" even if the warrant said nothing about a television crew); *compare Barrett v. Outlet Broadcasting, Inc.*, 22 F.Supp.2d 726, 738 (S.D. Ohio 1997) (*Stack* does not apply if press accompanies police on warrantless search). *See generally Wilson v. Layne*, 526 U.S. 603 (1999) (police conduct in inviting and permitting press to be present during execution of a search warrant that made no mention of media presence or assistance violates the Fourth Amendment).

## CONCLUSION

For each of the foregoing reasons, Defendants American Broadcasting Companies, Inc. and Hearst-Argyle Television, Inc., d/b/a WCVB TV Channel 5, respectfully request that this Court grant their motion for summary judgment and dismiss each of the Counts of the Amended Complaint pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

**AMERICAN BROADCASTING COMPANIES, INC. and HEARST-ARGYLE TELEVISION, INC. d/b/a WCVB-TV CHANNEL 5,**

By their attorneys,

/s/ Brandon L. Bigelow
Jonathan M. Albano, BBO# 013850
Brandon L. Bigelow, BBO # 651143
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

*Of counsel:*

Indira Satyendra, Esq.
American Broadcasting Companies, Inc.
77 West 66th Street
New York, NY 10023-6298
(212) 456-7777

Dated:  September 19, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the plaintiff Leon Robinson (A-225594), Souza-Baranowski Correctional Center, P.O. Box 8000, Shirley, MA 01464 by Federal Express and on counsel of record for the defendants by first class mail and electronically via the ECF/CM on September 19, 2005.

/s/ Brandon L. Bigelow
Brandon L. Bigelow