UNITED STATES DISTRICT COURT    FILED
FOR THE DISTRICT OF MASSACHUSETTS CLERKS OFFICE

2007 AUG 20 P 2: 31

U.S. DISTRICT COURT
DISTRICT OF MASS.

```
                              )
LEON ROBINSON,                )
      Plaintiff               )
                              )
v.                            )    CIVIL ACTION NO. 04-11023-RCL
                              )
                              )
                              )
THOMAS MENINO, ET AL.,        )
        Defendants.           )
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR APPOINTMENT OF COUNSEL

There is 'normally' no constitutional right to counsel in
a civil case. Nevertheless, Congress has granted District
Courts statutory authority to request appointed counsel for
indigent civil litigants. See 28USC§1915(e)(1),(providing that
the court may request an attorney to represent any person
unable to afford counsel.) See also Montgomery v. Pinchak,
294 F.3d 492,498(3rd 2002) and Cookish v. Cunningham, 787 F.2d
1,2 (1st 1986).

"This court has interpreted §1915 as affording District
Courts 'broad discretion' to determine whether appointment of
counsel in a civil case would be appropriate." Tabron v. Grace
,6 F.3d 147,153(3rd 1993). The 'Tabron' court found that the
decision to appoint counsel may be made at ANY point in the
litigation, and may be made by a District Court 'sua sponte'.
Id at 156. In Tabron the court developed a list of criteria to

to aid the District Courts in weighing the appointment of
counsel for indigent civil litigants. As a 'threshold' matter,
a District Court MUST assess whether the claimant's case has
some arguable merit in fact and law. If a claimant overcomes
this 'threshold' hurdle, we identify a number of factors that
a court should consider when assessing a claimant's request
for counsel. These include:

    1.) Plaintiff's ability to present his own case.

    2.) The difficulty of the particular legal issues.

    3.) The degree to which 'factual investigations' will be
        necessary, and the ability of the plaintiff to pursue
        this investigation.

    4.) Plaintiff's capacity to retain counsel on his own.

    5.) The extent to which a case is likely to turn on
        credibility determinations, and:

    6.) Whether the case will require testimony from any
        expert witnesses.

See Tabron supra 6 F.3d at 155-57; also Hendricks v. Coughlin,
114 F.3d 390,392(2nd 1997) and Parham v. Johnson, 126 F3d 454,
457(3rd 1997). This list of factors is not exhaustive, but
instead should serve as a guidepost for the court to exercise
its discretion.


### 1.)                  **MERIT OF CLAIMS IN FACT AND LAW**

    The claims made by the plaintiff in this action, without
a doubt, have merit and are supported by facts. The defendants

have already admitted that they entered, searched and seized evidence from the plaintiff's home, and that a camera crew from a television network also entered and filmed this entire event. This camera crew did not have judicial authorization to enter, or film inside, the plaintiff's **private** dwelling. The plaintiff also believes that some of this footage was broadcast without his consent. The plaintiff's claims are very similiar to the claims in Wilson v. Layne, 526 US 603/119 SCt 1692(1999);Ayeni v. CBS Inc., 848 F.Supp 362(E.D.N.Y.); Ayeni v. Mottola, 35F.3d 680(2nd 1994); Hanlon v. Berger,526 US 808/119 SCT 1706(1999) and US v. Hendrixson, 234 F.3d 494(11th 2000).

The plaintiff plainly meets the 'threshold' requirement that at least some, if not most, aspects of his 42USC§1983, MGL.c.12§§ 11H & 11I(Mass Civil Rights Act) and 18USC§2236 claims have "some arguable merit in fact and law." Tabron supra 6 F.3d at 155. The facts admitted to by the defendants clearly demonstrate a 'prima facie' case of 4th amendment (US) and Art. 14 (Mass) Constitutional violations, and the law on such matters was 'clearly established' when these violations took place. Mr. Robinson plainly meets his 'threshold' requirement. "It is this courts policy to appoint counsel in civil rights cases filed by **inmates,** after plaintiff's allegations have withstood a motion to dismiss or for summary judgement." Hendricks v. Coughlin, 114 F.3d 390,391.

## 2.)                    **DIFFICULTY OF PARTICULAR LEGAL ISSUES**

Until the US Supreme Court's decision in Wilson v. Layne,

in 1999, the Circuits were split on these issues/questions, and the 'law' was "not clearly established." Even now, there is not much case law interpreting <u>Wilson v. Layne</u>. The First Circuit has not ruled on the issues presented here.

Additionally, these claims involve numerous defendants, some with unlimited resources and attorneys representing them. Mr. Robinson is currently incarcerated in a level 6 "Super Max" state prison. This severely limits his ability to investigate, document and present crucial facts in what appears to be a very fact intensive case. He has severely limited telephone use, no access to the internet and he can not travel to take depositions. In like manner, Mr. Robinson's ability to develop the facts as to the nature of each defendant(s) involvement, their liability,immunity, ect...., or non-involvement is seriously impaired. Properly litigating this matter would be a daunting task for a law firm, it is almost insurmountable to an "pro se" plaintiff in Mr. Robinson's situation. He is indigent, incarcerated and without any legal assistance. He faces substantial problems in the very development of the factual record that is needed for resolution of a case that poses 'complex legal issues' such as this one. In such situations, the court itself may unfortunately be thrust into the uncomfortable role of a quasi-advocate BEFORE it can decide a dispositive motion, being required to exercise its powers to pursue matters for which it has neither the resources, nor the responsibility, under our adversarial system. In this type of situation, the appointment of counsel serves the interest of the court, the plaintiff and **also** the defendants. See <u>Hendricks v. Coughlin</u>, 114 F.3d 309, at 393-395. Ultimately, these factors

**4**

weigh in favor of appointing counsel.


3.)              **DEGREE OF FACTUAL INVESTIGATION NEEDED**

    As stated above, the 'factual' investigation, and documentation
, is extremely important in this case. Mr. Robinson's incarceration
makes it almost impossible for him to conduct any 'meaningful'
investigations. In a case such as this, the crux of the dispute
centers on who entered the plaintiff's home, when it was entered,
what the police did while inside and what the 'media' did while
inside the plaintiff's home. Finding and reviewing the film shot
by the ABC camera man will be indispensible in substantiating the
plaintiff's claims. In this type of situation, depositions are
in-comparably preferable to written interogatories as a vehicle
for seeking out useful evidence, not only because of the greater
ease in shaping later questions based on earlier answers, but also
because interrogatory questions are typically prepared by lawyers
rather than through the  uncounseled responses of the witnesses.
Hendricks supra, 114 F.3d at 394-95.

    Lastly, the plaintiff has already spent a great deal of time
and energy attempting to collect 'discovery' he needs. The papers
and other documents he has been provided conflict with each other,
and some answers 'insult' commonsense. It is clear that the
defendants plan on "stonewalling" as long as possible. A review of
the defendants conduct will show a consistent pattern of not only
dilatory conduct, but of contumacious refusal to cooperate in
discovery. Intervention by the court will be the only way to

facilitate the production of the discovery he needs, and is entitled to. Counsel will be critical at this stage, and to develop this material into relevant evidence to use at trial. "Exceptional circumstances **are present** such that a denial of counsel is likely to result in fundamental unfairness, impinging on [plaintiff's] Due Process rights." <u>DesRosiers v. Moran</u>, 949 F.2d 15,23(1st cir. 1991).

**4.)**             <u>**CAPACITY TO RETAIN PRIVATE COUNSEL**</u>

As stated in the attached motion, the plaintiff has been in the custody of the Massachusetts Dept of Correction since 02/21/01. Any funds he did have were used on his criminal defense. He has been found "indigent" by the state courts in his criminal proceedings, and also allowed to proceed "in forma pauperis" in Suffolk Superior Court (#SUCV2004-00377), where this matter originated. (See state docket, paper #11[04/26/04] White,J.). This status should transfer to this Honorable Court. Mr. Robinson has written to several legal organizations requesting assistance in this matter, but he is still waiting for any responses. The Federal Defender Office in Boston has recently informed him that they do not handle civil matters. The plaintiff has no funds to hire a lawyer to assist him in protecting his civil rights.

**5.)**          <u>**IMPORTANCE OF 'CREDIBILITY' DETERMINATIONS**</u>

This aspect will also be crucial in this case. There are numerous defendants in this action, and each has his own version

**6**

of what happened, when it happened, who entered the plaintiff's home, what was filmed and by who and where this film footage is. The credibility of the partys involved in this matter is crucial, and will effect the outcome of the entire case.

6.)                    **NEED OF EXPERT WITNESSES**

At this time the need of any expert witnesses is not known. It is possible that an expert on TV news procedures, editing 'raw' footage and production may be necessary. Finding the film that was recorded concerning the investigation, arrest of the plaintiff and the entry, search and seizure of his home and property will be indispensible in this civil action. This film, without a doubt, will prove exactly what transpired during the relevant time periods of this action, and could possibly resolve this matter immediately after reviewing of this film. The plaintiff has been sent in 'circles' attempting to find this film footage on his own. It is clear that the defendants do NOT want this film found. Counsel will be much more effective in finding this film, and determining the need of any expert witnesses.

## CONCLUSION

**WHEREFORE,** the plaintiff prays that this Honorable Court will appoint counsel in this matter. The plaintiff is aware of the 'scarcity' of counsel willing to accept 'pro bono' appointments,

however, where a plaintiff's case clearly has 'merit' and meets ALL of the aforementioned factors, courts should "make every attempt to obtain counsel. In a time when the need for legal help among the poor is growing and public funding for such services has not kept pace, lawyers ethical obligations to volunteer their time and skill 'pro bono publico' is manifest." Mallard v. U.S. Dist Ct., 490 US 296,310/109 SCt 1814,1822-23(1984). Representation of indigent litigants is not only an important responsibility of the Bar, but it also provides exellent opportunity for newer attorneys to gain courtroom experience.

For all of the aforementioned reasons, the plaintiff requests that this Honorable Court assist him in his search for counsel, and to appoint such counsel,as soon as possible, in this civil action. Not doing so would be unfair and an abuse of discretion.


DATED: 8 /4/07

RESPECTFULLY SUBMITTED,

Leon Robinson, pro se
Plaintiff
SBCC
PO Box 8000
Shirley, MA. 01464